FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 JUL 11  AM 9: 37

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SNOSWELL DESIGN PTY, LTD. | CIVIL ACTION |
| Plaintiff | NO. 02-2121 |
| versus | SECTION |
| DIGIMATION, INC. | MAGISTRATE SECT. T MAG. 1 |
| Defendant | |

## COMPLAINT

**COMES NOW** Plaintiff, Snoswell Design Pty, Ltd. (hereinafter "Plaintiff" or "SDP"), pursuant to Rule 3 of the Federal Rules of Civil Procedure and for its claims for relief against Defendant Digimation, Inc. (hereinafter "Defendant" or "Digimation") states and alleges as follows:

### PARTIES

1.  SDP is a foreign company organized and existing under the laws of Australia, with its principal place of business at Aldgate Valley Road, Mylor Adelaide 5153, Australia.

2.       Digimation is, upon information and belief, a corporation organized and existing under the laws of the State of Louisiana, with its principal place of business in St. Charles Parish, State of Louisiana.

## **JURISDICTION**

3.       This is an action for declaratory judgment, copyright infringement, false designation of origin, and related claims of unfair competition, unfair trade practices, and breach of contract.

4.       As to the declaratory judgment cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., there is complete diversity of citizenship between the Plaintiff and Defendant in this action.  As is more fully shown below, more than $75,000, exclusive of interest and costs, is in dispute.  Therefore, this court has jurisdiction over this action under the provisions of 28 U.S.C. § 1332.

5.       As to the copyright infringement cause of action, this action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq.  This court also has jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a) and (b).

6.       As to the false designation of origin cause of action, this action arises under the Lanham Act, 15 U.S.C. 1125.  This court also has jurisdiction over this action under 15 U.S.C. § 1121.

7.       This court also has jurisdiction over the related claims pursuant to its supplemental jurisdiction of 28 U.S.C. § 1367(a).

8.       Venue is proper in this district under 28 U.S.C. § 1391(b) and § 1400(a).

## BACKGROUND FACTS

9. SDP is the developer, owner, and licensee of certain software products for use in the field of three-dimensional computer modeling and animation, particularly a software product called "Absolute Character Tools" (hereinafter "ACT").

10. The ACT software product is a non-U.S., Berne Convention work for which registration in the U.S. and compliance with U.S. statutory formalities is not required in order to bring a copyright infringement action.

11. SDP and Digimation executed an "Exclusive Software Distribution Agreement" dated September 10, 2001, in connection with "Software" as defined by Paragraph 20 of that Agreement. A copy of the Agreement is attached as Exhibit "A" and made a part hereof as if copied *in extensio* herein.

12. Paragraph 20 of the Agreement defines Software as "Absolute Character Tools (ACT) 1.0" followed by a qualitative description of the Software which includes two additional references to "ACT 1.0."

13. Paragraph 5 of the Agreement states, *inter alia*, that "Publisher agrees that all material provided by Developer shall be deemed as confidential unless explicitly marked 'For Public Release'."

14. Paragraph 8 of the Agreement states that Digimation shall discontinue use of SDP's names, images, and trademarks (the "Marks") upon termination of the Agreement.

15. Paragraph 9(B) of the Agreement states that the Agreement may be terminated at any time by either party if there is a default of a material obligation which is not cured within thirty (30) days following notice from the non-defaulting party.

16. Digimation has distributed the ACT product with a copy protection system whose authorization scheme has been circumvented by third parties.

17. On or about June 1, 2002, SDP delivered written notice to Digimation of Digimation's default of its material obligation of confidentiality regarding the materials provided to Digimation by SDP, including the ACT product itself. SDP further declared in such notice that the Agreement was thereby terminated.

18. Digimation has not cured such default, nor is Digimation capable of curing such default, as it is incapable of performing under the Agreement. Such acts of default include, but are not limited to:

    a. Failure to perform basic marketing and publishing functions under the Agreement;

    b. Failure and willful refusal to provide accounting and make payment pursuant to the Agreement;

    c. Assertion of rights and ownership under the Agreement to which Digimation does not have, both during the course of the Agreement and after its termination;

    d. Failure and refusal to provide effective copy protection systems for the Software, which failure cannot be cured;

    e. Willful and intentional exploitation of Software in a manner that operates to the detriment of SDP and to the sole and exclusive benefit of Digimation.

19. Despite SDP's notice to Digimation of such default and termination, Digimation disputes such termination and continues to distribute the ACT product with an ineffective copy protection system. Digimation also continues to use SDP 's Marks associated with ACT, all to the detriment of SDP.

20. Paragraph 12 of the Agreement states that Digimation shall receive a right of first refusal to exclusive distribution of "future plug-ins" and products of SDP that would "obsolete" existing versions of ACT 1.0.

21. SDP has not developed any plug-in or products of ACT which renders the ACT 1.0 product obsolete. Digimation erroneously asserts right of first refusal to ACT 1.5, a version of ACT which is neither a "future plug-in" nor a product that renders the existing Software obsolete. Such willful and deliberate refusal is intended to impede and does in fact impede SDP's ability to earn a living, exploit its own products, and constitutes an effort by Digimation to interfere with a competitor and/or consumer's ability to conduct trade.

## FIRST CAUSE OF ACTION
## DECLARATORY JUDGMENT

22. SDP hereby incorporates by reference, as if fully stated herein, all allegations in paragraphs 1-21.

23. In order to resolve the controversy between SDP and Digimation as to the Agreement, SDP requests that, pursuant to 28 U.S.C. § 2201, this court declare the respective rights and duties of the parties in this matter and, in particular, that the Court issue judgment in favor of SDP, declaring:

    (a)    the Agreement is terminated; and

    (b)    Digimation has no right to distribute versions of Software; or in the alternative,

    (c)    Even if the Agreement is not properly terminated, that (i) Digimation has no right to distribute versions of any product other than Act 1.0 and its sub-versions; and (ii) Digimation has no right of first refusal to distribute versions of ACT higher than version 1.0 and its sub-versions.

## SECOND CAUSE OF ACTION:
## COPYRIGHT INFRINGEMENT

24. SDP hereby incorporates by reference, as if fully stated herein, all allegations in paragraphs 1-23.

25. Digimation has access to the ACT product, and retains possession of copies thereof, by virtue of its former distribution relationship with SDP.

26. The ACT product currently being copied and distributed by Digimation is at least substantially similar to the copyrighted works of SDP.

27. Digimation continues to copy and distribute the ACT product, despite SDP's termination of the Agreement, such copying and distribution constituting an infringement of SDP's copyrights therein.

28. As a result of Digimation's infringement, SDP has suffered and will continue to suffer damages, loss of profits, and irreparable injury, unless enjoined by this Court.

## THIRD CAUSE OF ACTION:
## FALSE DESIGNATION OF ORIGIN

29. SDP hereby incorporates by reference, as if fully stated herein, all allegations in paragraphs 1-28.

30. At least as early as September, 2001, SDP has used the Marks to identify its product and to distinguish it from those made and sold by others by, among other things, prominently displaying the Marks on the product and its associated displays.

31. In addition, SDP has prominently displayed the Marks on letterheads, bills, advertising, and on Internet websites throughout the United States and around the world, including the trade area in which Digimation does business.

32. Digimation's use of SDP's Marks constitutes a false designation of origin which is likely to deceive and has deceived customers and prospective customers into believing that Digimation is an authorized distributor of SDP's products, and that Digimation is somehow still affiliated with or sponsored by SDP. Consequently, Digimation's actions are likely to divert and have diverted customers away from SDP.

33. Absent the Agreement, which has been terminated, SDP has no control over the nature and quality of Digimation's distribution of the ACT product. Any failure, neglect or default by Digimation in providing such products will reflect adversely on SDP as the believed source of origin thereof, hampering efforts by SDP to continue to protect its outstanding reputation for high quality products and services, resulting in loss of sales thereof and the considerable expenditure to promote its products under the Marks, all to the irreparable harm of SDP.

34. Digimation's false designation of origin has caused and will continue to cause SDP irreparable harm unless enjoined by this Court.

35. The aforedescribed actions of Digimation constitute a violation of 15 U.S.C. § 1125.

### FOURTH CAUSE OF ACTION:
### UNFAIR COMPETITION & DECEPTIVE TRADE PRACTICES

36. SDP hereby incorporates by reference, as if fully stated herein, all allegations in paragraphs 1-36

37. By committing the acts herein alleged, Digimation has committed unfair competition in violation of Louisiana's common law of unfair competition and deceptive trade practices, in violation of Louisiana's Deceptive Trade Practices Act, Title 51, Section 1401, *et seq.*, ("LDTPA") causing SDP damages and loss of profits.

38. By committing the acts herein alleged, which are specifically alleged to be unethical, immoral, unscrupulous, oppressive and substantially injurious to SDP, Digimation has committed and will continue to commit unfair methods of competition and unfair and deceptive acts and practices in the conduct of its trade within the State of Louisiana in violation of the LDTPA causing SDP damages and loss of profits.

39. Digimation's unlawful conduct will continue to damage SDP unless enjoined by this Court, and SDP has no adequate remedy at law.

## FIFTH CAUSE OF ACTION: BREACH OF CONTRACT

40. SDP hereby incorporates by reference, as if fully stated herein, all allegations in paragraphs 1-39.

41. Digimation has failed to remit to SDP all moneys owed to SDP based upon sales of ACT, such failure constituting a breach of Digimation's obligation to do so under Paragraph 3A of the Agreement.

42. Digimation has failed to incorporate an adequate copy protection system for ACT in connection with Digimation's distribution of ACT, such failure constituting a breach of Digimation's obligation of confidentiality under Paragraph 5 of the Agreement.

43. The aforedescribed acts and omissions of Digimation in connection with its obligations under the Agreement have resulted in damages and loss of profits to SDP.

**WHEREFORE**, Snoswell Design Pty, Ltd. Prays, after due proceeding had, that this Court enter judgment in favor of plaintiff and against defendant, as follows:

(A)  That this Court issue a declaratory judgment declaring:

  (i)  that the Agreement is terminated; or, in that alternative, that

  (ii)  if the Agreement is not terminated, Digimation has no right to distribute versions of ACT higher than version 1.0 and its sub-versions; and

  (iii)  if the Agreement is not terminated, Digimation has no right of first refusal to distribute versions of ACT higher than version 1.0 and its sub-versions.

(B)  That a preliminary and permanent injunction issue restraining Digimation, its agents, servants, employees, successors and assigns and all others in concert and privity with it from false designation of origin as to the ACT product and infringement the Marks of Snoswell Design Pty, Ltd., from infringement of Snoswell Design Pty, Ltd.'s copyright in the ACT product, from injuring Snoswell's business reputation, from unfairly competing with Snoswell Design Pty, Ltd., and from engaging in unfair and deceptive trade practices;

(C)  That Digimation be required to account to Snoswell Design Pty, Ltd. for Digimation's profits, the actual damages suffered by Snoswell Design Pty, Ltd. as a result of Digimation's acts of copyright infringement, false designation of origin, unfair competition, unfair and deceptive trade practices, and breach of contract, together with interest and costs;

(D)  That Digimation be ordered to surrender for destruction all products, labels, advertisements and other materials constituting infringement of Snoswell Design Pty, Ltd.'s copyrights and Marks;

(E) That Digimation be compelled to pay Snoswell Design Pty, Ltd.'s attorney's fees, together with all costs of this suit, under Louisiana Revised Statutes, Title 51, Section 1405, and other applicable law; and

(F) For such other and further relief as may be just and equitable.

Respectfully submitted,

**ADAMS AND REESE LLP**

_/s/ William J. Kelly III_

William J. Kelly III, (T.A.) Bar #21662
Warner J. Delaune, Jr. Bar #20780
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210

**Attorneys for Plaintiff,
Snoswell Design Pty, Ltd.**

**PLEASE SERVE:**

DIGIMATION, INC.
Through its Registered Agent
David Warner Avgikos
11 Zee Ann
Luling, LA   70070



## Exclusive Software Distribution Agreement

This Software Distribution Agreement ("Agreement") is made and effective this **Monday 10th September 2001** by and between Digimation, Inc., a Louisiana Corporation ("Publisher"), and Snoswell Design Pty Ltd ACN 073 792 515 ABN 23 285 511 479 ("Developer")

Whereas Publisher is in the business of marketing and distributing software products

Whereas Developer has developed a range of certain software products referred here as the "Software", including all updates, versions and revisions during the term of this Agreement, which it desires to have distributed

Now, therefore, it is agreed

### 1. Exclusive Distribution.

A. Territory   Developer grants Publisher exclusive worldwide rights to market and sell its range of products ("Software"), as listed in Section 20

B. Marketing   Publisher will use, at its discretion, magazine advertising, catalog placement, direct mail, reseller channel, Internet and/or other means as Publisher deems appropriate to market Software Publisher will inform Developer of such marketing activities in writing prior to commencing them

C. Limitations   This agreement specifically excludes any and all versions and derivatives of the Software, as listed in Section 20, that do not run within the Discreet 3ds max family of products

D. Developer Direct Sales   Publisher agrees that Developer can sell products ("Software"), as listed in Section 20 but that all sales be executed through the Publisher for a period of one (1) year from the commencement of Initial Term listed in Section 9A   Any direct sales attributed to the Developer and Developers employees activities but executed through Publishers sales system shall attract a further 10% sales commission within the Division of Revenue listed in Section 3A – payable in the same manner as payments as detailed in Section 3

### 2. Software Interface.
The Software interface(s) shall include the words: **Published Exclusively by Digimation** as well as the Digimation company logo   The software and documentation may also include the Developer's company and/or product logo(s)

### 3. Division of Revenue and Suggested Retail Price.

A. Division of Revenue   Publisher will pay to Developer 50% of the gross resale price for each software package sold   Payment will be in the form of wire transfer or company check delivered by 5 day or better express to the accounts specified by Developer in Appendix A by the 15th of each month for the previous month's sales   Publisher will include an accounting report listing each buyer (including email address if the Publisher has them) and the purchase price paid for the Product

B. Suggested Retail Price   The initial suggested retail price of the Software is $1,295.00 US Dollars   Developer understands that Publisher may sell Software below the suggested retail price to dealers and/or end users, and that Publisher is forbidden by law to control the retail price   The suggested retail price can be changed at any time but only with the written agreement of both Publisher and Developer

### 4. Demonstration Copies.





Developer grants Publisher the right to give away free, not for resale Demonstration copies of Software as deemed necessary for marketing and sales support purposes Publisher will inform Developer in writing of all such activities and products given away within thirty (30) days of giving away said Demonstration copies of software

### 5. Confidentiality.
Developer and Publisher may have access to information and materials regarding respective operations and/or future products Developer and Publisher agree not to disclose this information during or prior to termination of this Agreement. Developer also agrees not to disclose the terms and conditions of this Agreement. Publisher agrees that all material provided by Developer shall be deemed as confidential unless explicitly marked with "For Public Release"

### 6. Technical Support.
Publisher will use its best efforts to provide technical support for Software between the hours of 9 00 AM to 6 00 PM Monday through Friday CST   Developer agrees to use its best efforts provide technical support to Publisher in cases where Publisher is unable to provide adequate technical support

### 7. Returns.
Publisher reserves the right to refund the full purchase price of Software back to any customer if the customer is unsatisfied and returns the Software within thirty (30) days back to Publisher The amount paid to Developer for returned goods will be deducted from the next month's Royalty payment

### 8. Trademarks, Names and Images.
Developer grants Publisher full use of all applicable names, images and trademarks provided that they are used in conjunction with the marketing of the Software. In the event of termination of this agreement, Publisher agrees to discontinue use of said names, images and trademarks

### 9. Term and Termination
A. Term   The "Initial Term" of this Agreement shall commence on **November 1st 2001** and shall continue for a period of three (3) years, unless terminated earlier as provided herein Either party may terminate this Agreement effective upon the end of the Initial Term by written notice to the other at least ninety (90) days prior to the end of the Initial Term If not terminated at the end of the Initial Term, the Agreement shall automatically renew for successive periods of one (1) year each, unless terminated by either party at least ninety (90) days before the end of any renewal term

B. Termination This Agreement may be terminated at any time (i) by either party if there is a default of a material obligation which is not cured within thirty (30) days following notice from the non-defaulting party, (ii) by Developer if Publisher ceases to function as an ongoing concern, (iii) by both parties if agreed to in writing   Except for a termination for cause, neither party shall be liable to the other or to any other person for any loss or damage occasioned by the termination of this Agreement as provided herein

### 10. Software Errors.
Developer agrees to make all reasonable efforts to repair any reported, reproducible errors in the Software within thirty (30) days of written notification of their existence Software errors shall include any problems with the Software that cause crashes, unpredictable behavior, and/or any other flaws that prevent the software from operating as expected.



### 11. Updates, Improvements and Enhancements.
Developer shall give written notice to the Publisher, at least ninety (90) days in advance, of any significant planned update to the products that is intended for release in a new version of the products

### 12. Right of First Refusal.
Developer grants Publisher the right of first refusal to exclusive distribution of future plug-ins and products that may be developed by Developer that would obsolete existing versions of the Software, provided the parties, after negotiating in good faith, are able to mutually agree to the terms and conditions of such distribution

### 13. Ownership of Software & Source Code.
Ownership. Developer warrants that Developer has all rights, titles and interests in and to the Software sufficient to execute this agreement, and that this Agreement does not violate any other agreements that may concern the Software

### 14. Limitation of Remedies and Liability
IN NO EVENT SHALL PUBLISHER OR DEVELOPER BE LIABLE FOR ANY INDIRECT, SPECIAL INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING LOSS OF PROFITS) WHETHER BASED ON CONTRACT, TORT, STRICT LIABILITY, OR ANY OTHER LEGAL THEORY, EVEN IF PUBLISHER AND/OR DEVELOPER WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES

### 15. Notices.
Any notice or other communication under this Agreement shall be deemed given if delivered in writing to the intended recipient either in person or mailed, certified or registered, postage prepaid, or by recognized overnight delivery service, to the intended recipient at the address specified herein

If to Developer   Snoswell Design  Aldgate Valley Rd, Mylor Adelaide 5153 Australia
If to Publisher   Digimation, Inc        107 Mallard Street, Suite D  St Rose, LA  70087

### 16. Governing Law.
This Agreement shall be governed, construed and enforced according to the laws of the State of Louisiana

### 17. Final Agreement.
This Agreement terminates and supersedes all prior understandings or agreements on the subject matter hereof  Only a further writing that is duly executed by both parties may modify this Agreement

### 18. Headings.
Headings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent
### 19. Severability.
If any term of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included

### 20. Description of Software for Distribution.

~~A   FaceGen 1 0  A plug-in designed to create human like heads via the manipulation of a number of parametric controls  The plug-in is designed to run within Discreet's 3ds max 3 x and 4 x  Although the Developer may include additional features the core FaceGen software subject to this~~

~~agreement only provides a single head mesh and controls for altering said mesh. This does not necessarily include hair, teeth, tongue, eyebrows, eyelashes, hair or any other component other than the naked skin surface of the head. Provision of any of these optional features in one version does not imply or obligate their inclusion in future versions.~~

B. <u>Absolute Character Tools (ACT) 1.0</u>. A suite of plug-ins that essentially add a virtual muscle (vMuscle) 3D class of object to **3ds max**, editing tools for vMuscles (vmSectionEditor Utility), modifiers for vMuscles (vmLink, vmVLink and vSmooth) and a skin deformation system (vSkinDeformer - implemented as a modifier for Editable meshes, Editable Poly and Patch class objects at present). While other minor plug-ins may also be included at the mutual agreement of the Developer and Publisher, any such minor additions are not essential to the core purpose or value of the ACT suite of software. For legal and accounting purposes ACT 1.0 consists of two distinct sets of software components – those based on Intellectual Property licensed from TGI, hereafter called ACT Legacy Software, and new code that is not part of said licensing, hereafter called ACT New Software. At the date of signing this agreement the ACT 1.0 suite will comprise a 50/50 equal split of ACT Legacy Software and ACT New Software. The developer will give Publisher at least 90 day advanced written notice of any variation to this ratio.

## 21. Executed By:

**Digimation, Inc. by:**

BEAU PERSCHALL                                Date Nov 15TH, 2001

Signature: _[signed]_

**Developer:**

Snoswell Design Pty Ltd By, Mark Snoswell      Date 26th October 2001

Signature: _[signed]_

26-10-2001



## APPENDIX A:

Snoswell Design Pty Ltd
As trustee for Snoswell Family Trust
ACN 073 792 515   ABN 23 288 511 479
Aldgate Valley Rd, Mylor SA 5153
Ph (08) 8388 5188

Contacts

Accounts and administration
Helen Snoswell        Email helen@cgCharacter.com

All other Matters
Mark Snoswell         Email mark@cgCharacter.com


Payment Account Details

Snoswell Design Pty Ltd ATF Snoswell Family Trust.
Bank of South Australia  Stirling branch
BSB 105
Branch 079
Account 040432340